270 P.2d 971

In re LATSIS' ESTATE.

LATSIS et al.   v.   ZAMBUKOS et al.

No. 7954.

Supreme Court of Utah.

June 2, 1954.

White, Wright & Arnovitz, Gustin, Rich-
ards & Mattsson, James W. Beless, Jr., Salt
Lake City, for appellants.

162

Moss & Hyde, Mulliner, Prince & Mulliner, Salt Lake City, for respondents.

CROCKETT, Justice.

Appeal from orders of the lower court entered December 12, 1952, dismissing petitions of certain heirs of James John Latsis, deceased. The petitions, filed by these heirs who reside in Greece, alleged improper acts on the part of administrators Virginia Latsis Zambukos and the Utah Savings and Trust Company and prayed for an "order to show cause why administrators should not be required to properly administer [the] estate."

James John Latsis died intestate at Salt Lake City, Utah, on February 5, 1944, leaving as his heirs, Virginia Latsis, his widow and one of the defendant administrators; Peter J. Latsis, his brother residing at Salt Lake City, Utah; and the three plaintiffs residing in Greece, two of whom were brothers and the other the sole son of a deceased brother.

On March 14, 1944, Letters of Administration were issued to Virginia Latsis and the Utah Savings and Trust Company; on March 8, 1944, the lower court under authority conferred by Utah Code Annotated 1953, 75–14–25, appointed N. J. Cotro-Manes, an attorney at Law who was representing Peter J. Latsis, to also represent the non-resident heirs.

A controversy as to the amount of property that should be included in the estate, which had reached the stage of litigation in the District Court, was settled when a petition and stipulation was filed on February 13, 1945 by the co-administrators Virginia Latsis and the Utah Savings and Trust Company, Virginia Latsis as wife and heir of deceased, Peter J. Latsis, and N. J. Cotro-Manes representing the non-resident heirs.

The pertinent part of the petition is as follows:

"Whereas, * * * the parties hereto have estimated, as best they can from the appraisals and other information, the value of the said estate and the interests of the said four heirs, * * * and have determined that the said value of the said interests of the four heirs will be approximately $10,000.00, and

"Therefore, it has been agreed that the said four heirs * * * will accept in full settlement of all of their claims, interests and demands * * * the sum of $10,000.00 to be paid as hereinafter agreed and provided. And that the said administrators and the said Virginia Latsis agree to the said payment and settlement to the said four heirs, as aforesaid, of the sum of $10,-000.00, subject to the approval of the above entitled court.

"That the said payment and settlement shall become binding and conclusive as to each of the said four heirs * * * *upon the acceptance of his por-*

*tion of said fund and the execution of the necessary instruments to receipt therefor and to assign his said interest and release the said estate. That the said settlement shall become binding as to each of said heirs accepting the same and executing such instruments.*

"That the Court, upon hearing hereon, shall determine and fix the attorneys fees and charges of N. J. Cotro-Manes, as attorney representing the said four heirs by appointment of the above entitled Court, and shall direct the manner of disbursement of the said fund. It is recommended that disbursement as to William J. Latsis, Nick J. Latsis and John G. Latsis, residing in Greece, be made through the Hellenic Bank and Trust Company, of New York, to be transmitted through their correspondents in Greece, to each of said heirs *upon receiving from such heir, duly executed, a sufficient receipt, release and assignment of the interest of each said heir in the said estate and the properties belonging thereto."*

As a result of this development, Virginia Latsis dropped her suit to have any of the estate segregated as her separate property.

The order approving and confirming the petition and stipulation allowed attorney's fees to Cotro-Manes, directed payment to be made to the foreign heirs through the Hellenic Bank and Trust Company or the American Express Company, and provided "that the issuance and delivery of checks to such source shall relieve the administrators herein from further responsibility." It further stated:

"It is further ORDERED that the said agreement and distribution shall become binding and conclusive as to each of the said four heirs, *upon the acceptance* by him, or by his heirs at law, of said payments.

"It is further ORDERED that the said heirs shall furnish, or that their attorney shall procure from the said recipients of said payments, a proper receipt therefor and an assignment and relinquishment of all interest in this said estate, and a release of the administrators herein, which receipt and relinquishment shall be delivered to the administrators."

On September 9, 1945, the probate court approved a petition of final account and entered its decree of distribution and order discharging the administrators. Certain provisions of the decree shed further light on the method of distribution allowed by the court, as follows:

"5. That full settlement and payment has been made to Peter J. Latsis, residing in Utah, and his receipt, release and discharge filed herein. That $1500.00 has been forwarded through the American Express Company, being $500.00, each, to each of the said three remaining collateral. heirs. That $1250.00 has been paid to N. J. Cotro-

Manes, as attorney for the said heirs. That there remains to be paid and disbursed the sum of $5,250.00, as follows: $1500.00, each, to John G. Latsis, Nick J. Latsis and William J. Latsis, [the foreign heirs and plaintiffs below] and a balance of $750.00 to Attorney N. J. Cotro-Manes when the prior distribution of said prior respective sums to each of said three heirs is completed."

In its order the probate court stated:

"The settlement, payments and distribution, and provision for distribution, made pursuant to the order herein of February 27, 1945, [the petition and stipulation filed on February 13, 1945, hereinabove set forth] is approved and allowed.

"It is further ordered that all of the remaining properties of the said estate, after the payments and distributions aforesaid, of every nature, real or personal, whether discovered or undiscovered, and all property interests of the decedent at the time of his death, or acquired by his estate, are hereby distributed to Virginia Latsis, the surviving wife of the said decedent."

Plaintiffs, who have never accepted the payments transmitted to Greece pursuant to the stipulation and order approving it, initiated the present proceedings on October 29, 1951, claiming that because the estate has not been properly administered in accordance with the order of the probate court, distribution should be ordered according to the laws of succession. The lower court granted the defendants' motion to dismiss. This was error.

The distribution purports to be based upon a stipulation entered into on behalf of the heirs by Mr. Cotro-Manes who was appointed by the court to represent their interest pursuant to section 75–14–25, U.C.A. 1953.

In the first place, the attorney had no authority to enter into any stipulation which would preclude the heirs from claiming ther share in the estate under the laws of succession. The nature and the extent of his authority are well set out In re Lux's Estate [1] in which a similar statute was involved and the question was as to the fees of the attorney. "The court can no more appoint an attorney with authority to bind a person who is sui juris, to waive his rights, or concede claims made against him, or to institute proceedings for him, and incur costs chargeable to him, than it can do all these things without an attorney. * * * The court can do nothing with the aid of the attorney which it could not have done without him. He receives his authority only from the court, and not at all from the absent heir. As a friend of the court, his function simply is to aid the court in conserving the rights of unrepresented parties." Although In re Otting's Estate [2]

1. 134 Cal. 3, 66 P. 30, 31. See 11 Cal.Jur., § 793, p. 1204.

2. 62 S.D. 268, 252 N.W. 740.

reaches a different result from the Lux case as to the fees of the attorney, they agree with the above quoted language as to his authority. The heirs never having authorized Mr. Cotro-Manes as their attorney or agent, therefore he could not bind them, nor bargain away their rights.

In the second place, even if the stipulation had been binding it expressly provided that approval of the settlement by the court was subject to the heirs accepting payment, executing the necessary receipts, assigning their interest, and releasing the estate from liability. This must certainly have been ordered by the court advisedly and for the purpose of safeguarding the rights of these foreign heirs. None of these conditions having been complied with, how could the court possibly approve the settlement and distribution?

■ As an answer to the above, it is suggested that in approving the stipulation and finding that it gave the non-resident heirs a fair share of the estate, the court did only that which it would have done if no attorney had been appointed and no stipulation made. That is, that the court was merely determining the distributive share of the heirs under probate procedure pursuant to 75–12–16, U.C.A.1953, which authorizes settlement to be made, and that whether any agreement was made is immaterial.

It is clear beyond doubt that the court did not intend to invoke the authority given it by this statute, irrespective of whether that authority would extend to making a settlement under the circumstances present in this case even though no stipulation had been entered into. The section in question provides:

"When the real estate cannot be divided without prejudice or inconvenience to the owners, the court may assign the whole to one or more of the parties entitled to share therein who will accept it. * * * When the referees appointed to make partition are of the opinion that the real estate cannot be divided without prejudice or inconvenience to the owners, they must so report to the court, and recommend that the whole be assigned as herein provided, and must find and report the true value of such real estate. On filing the report of the referees and the making or securing of the payment as before provided, the court, if it appears just and proper, must confirm the report, and thereupon the assignment is complete, and the title to the whole of such real estate vests in the person to whom the same is so assigned."

The inconvenience and prejudice in this case did not come from the problem of divisibility of the real estate involved, but rather from a dispute as to the amount of property which should be included in the estate. Furthermore, there is no indication that the statutory procedures provided for

·were complied with, nor that any attempt was made to do so.

 It is argued that under the stipulation the heirs would receive about the same as they would have done in the absence thereof. That fact is immaterial. If they can be deprived of any part of their inheritance by the stipulation, they can be deprived of it all. Referring back to the statement of the court in the Lux case: The function of the attorney is to aid the court in conserving the rights of the represented parties, and it is not that of entering into agreements which may or may not, according to the discretion of the attorney, give them a fair share of the estate.

It is contended that the heirs are precluded from collaterally attacking the decree of distribution and order discharging the administrator. From what has been heretofore said, keeping in mind that the stipulation and the order confirming it expressly provide that the heirs are to be bound only if they accept payment, execute the necessary receipts, assign their interest and release the estate from liability, and the fact that the decree of distribution approves and incorporates the stipulation, it is apparent that the nonresident heirs were not intended to be bound by the decree until they had done the required acts. The decree was conditional on these acts being done, which condition·has not been satisfied.

·· ·The cause is remanded for the purpose of ·completing the probate by further proceedings not inconsistent with this opinion. Costs to appellants.

McDONOUGH, C. J., and HENRIOD and WADE, JJ., concur.

WORTHEN, J., .does not participate herein.